# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 14, 2009

## WADIE MICHAEL HOLIFIELD v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Tipton County**
**No. 5125     Joseph H. Walker, III, Judge**

---

**No. W2008-02040-CCA-R3-PC  - Filed August 21, 2009**

---

The petitioner, Wadie Holifield, appeals the denial of his petition for post-conviction relief by the Tipton County Circuit Court.  The petitioner was convicted of one count of aggravated sexual battery, a Class B felony, and sentenced to eighteen years in the Department of Correction.  On appeal, he raises the single issue of ineffective assistance of counsel, specifically arguing that trial counsel was ineffective by failing to: 1) investigate his mental health and his claim of impotence as possible defenses; 2) ensure an untainted jury by requesting "the Rule" prior to voir dire; 3) effectively preclude introduction or properly cross-examine a witness following testimony about the petitioner's prior drug habit; and 4) effectively advise the petitioner.  As an initial argument, the State contends that the petitioner has waived review based upon an untimely notice of appeal.  We agree that the notice was not timely filed, but, in the interest of justice, we elect to review the petitioner's issue.  Following review of the record, we find no error and affirm the denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Jobi Teague, Covington, Tennessee, for the appellant, Wadie Michael Holifield.

Robert E. Cooper, Jr., Attorney General and Reporter; Melissa Roberge, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Tyler Burchyett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

The relevant underlying facts of the case, as established on direct appeal, are as follows:

> The twelve-year-old victim, J.H., is the [petitioner's] stepdaughter.  Lisa Norman, the victim's mother, testified that on the day of the offense, January 16,

2005, she had been married to the [petitioner] for approximately fifteen months. She acknowledged that she and the [petitioner] had been having "difficulties" with credit cards and that they had fought that day after church. That night, J.H. was sleeping on a couch in the living room when the [petitioner] asked Lisa to "go take a bath so [they] could be intimate. Lisa then described observing the following events:

> I was in the tub, and [the petitioner] had come back to the bathroom and looked in. I can't remember if he said something or just looked in and then walked back to the living room.
>
> Well, I sat there a minute, and then I got an uneasy feeling. I don't know why. And I eased up out of the tub and walked into the living room, where I found - where I found him with his pants down and my daughter's pants down, with his face near her buttocks, with his hand on his penis.

Lisa said that the lights in the living room were on and that there was nothing between her and the [petitioner] to obstruct her view. She said that she "could actually see [J.H.'s] buttocks" and that the [petitioner's] head was "very close" to her buttocks; he "was bent over all the way." When Lisa confronted the [petitioner], "he pulled [J.H.'s] pants up and his pants up" and told her, "All I was doing was kissing her butt." J.H. awakened when she heard "the confrontation," and Lisa took her to a neighbor's house and called her mother. Lisa's mother, Claire Norman; her brother, Jerry Keith Norman; and her older daughter and her boyfriend later arrived at her house. Before they arrived, the [petitioner] "had gotten the muzzle loader" and "said he was going to shoot himself," but he did not. Lisa said that when her brother arrived, the [petitioner] said, "I've messed up big" and "tried to have excuses for what had happened," saying that his and Lisa's "sexual relationship wasn't good lately, and that the kids walk around and what they walk around in, which is normally shorts and tank tops." The police subsequently arrived and took the [petitioner] into custody. Lisa said that, eventually, she and the [petitioner] divorced.

The victim, J.H., testified that she went to sleep that night on the couch wearing a "pair of pajama pants and a T-shirt" and that she was a "sound sleeper." She remembered being awakened when she heard her mother and the [petitioner] arguing and said that her mother then took her to a neighbor's house. Asked if she had any recollection of the [petitioner] touching her that night, she said, "No, sir."

. . . .

The [petitioner] testified that on January 16, 2005, he and Lisa had argued on the way home from Claire's house about whether their credit cards were "out of hand." J.H., Lisa and he then watched a movie, and J.H. fell asleep. Lisa suggested

that they have sex, but the [petitioner] told her he was worried he was "impotent" because he was taking Lexapro, an antidepressant. Nonetheless, he asked her to take a bath because he "can't stand" body odors. He went into the bathroom once while Lisa was bathing and they talked about buying some boots. As Lisa was finishing her bath, the [petitioner] told her, "Well I'm going to go turn all the lights out and the TV, and I'll be right back." He then testified that the following happened:

> I went back over where [J.H.'s] feet were and [was] going to reach under there and see if I could find [the television remote control]. The crack in the cushion is usually where it ends up. I noticed [J.H.] had threw [sic] her covers off, and she just had her hand like - I don't whether she was scratching her butt or leg, but just had her hand sitting there, and she went back to sleep.
>
> Well, I had to move her foot to get the remote [controls] out. When I did, she drew her legs up like a little fetal position. I turned the cable box off, turned the TV off, walked over and put the controls on the end table, picked up my cigarettes and lighter, slid them in my pocket. When I did, my pants started to fall down, so I grabbed my britches and pulled them up with one hand.
>
> Lisa was coming out of the bathroom. She said, "What's taking you so long?"
>
> I said, "I had to find the remotes and turn the TV off."
>
> And she come [sic] walking to me. She said, "Why you [sic] holding your dick?"
>
> I said, "I ain't holding my dick. I'm holding my britches up."
>
> She said, "Oh. Why is [J.H.'s] pants down?
>
> And I looked over, and her pants were down about that far. But when she was in fetal position, I guess at the angle she was coming like this and [J.H.] was laying [sic] here, it looked like it was further down. She walked over to [J.H.] and was covering her up and looked at me and said, "Why is your pants down in back?"
>
> The [petitioner] denied saying, "All I did was kiss her butt."

S*tate v. Wadie Michael Holifield*, No. W2006-01225-CCA-R3-CD (Tenn. Crim. App., at Jackson, Apr. 5, 2007).

The petitioner was indicted by a Tipton County grand jury for aggravated sexual battery and, following a jury trial, was convicted as charged. He was subsequently sentenced to eighteen years, as a multiple offender, in the Department of Correction. The petitioner then filed a direct appeal to this court, challenging the sufficiency of the evidence and whether the jury was tainted based upon their overhearing courtroom conversations between the victim and her family. *Id*. The conviction and sentence were affirmed. *Id*. The petitioner then filed a timely *pro se* petition for post-conviction relief alleging, among other grounds, that he was denied the effective assistance of counsel. Following the appointment of counsel, a hearing was held, and testimony was heard from the petitioner and trial counsel.

## Post-Conviction Hearing

The petitioner testified that he was represented by multiple public defenders during the course of his case, the last of which was trial counsel who handled the trial. He testified that he only met with trial counsel three times for very short periods of time and that his case was not adequately investigated. According to the petitioner, trial counsel never inquired if he suffered from a mental condition or if he was on medications. While the petitioner acknowledged that he did not inform trial counsel of his alleged problems, he believed that counsel should have recognized them because the first time they met, he had just been released following a suicide attempt, was on suicide watch, and had bandages on his arms. Further, trial counsel did not discuss the possibility of procuring the services of a mental health professional as an expert to testify at trial for the petitioner's defense.

The petitioner also testified in regards to numerous complaints he had about trial counsel's action during the voir dire process of the trial and with the jury. He made blanket statements that trial counsel failed to request: (1) "the Rule" prior to voir dire allowing the jury the opportunity to mingle with the victim and her family; (2) that the jurors be sworn prior to voir dire; (3) a mistrial when it was discovered that a juror had been the victim's teacher in school, despite the fact that the juror was removed prior to deliberations; and (4) that all potential jurors be allowed to answer questions from the podium, allowing for more truthful answers. However, the petitioner failed to testify to any specific problems these actions caused or present any testimony from jurors in the case.

The petitioner testified that trial counsel erred when it allowed a witness to testify regarding the petitioner's drug problem. He stated that even though he informed trial counsel that the witness was lying, counsel failed to take any action. He also asserted that trial counsel never informed him that conversations which he had outside the courtroom could be used against him. He believed that certain comments he made to his wife and his mother-in-law while incarcerated were used against him at trial. The petitioner also found fault with trial counsel for failing to investigate his claim that he was impotent because he was prescribed Lexapro for depression, a side-effect of which is a decreased libido. According to the petitioner, trial counsel told him that this was irrelevant for trial.

The petitioner went on to state that trial counsel told him that, if he testified, his criminal record would not be used against him. Further, he alleged that he was not informed of his right to

-4-

refuse to take the stand. He also contended that trial counsel failed to request and argue that certain lesser included offenses be included in the charge. He further asserted that trial counsel should have challenged the instruction given on sexual contact and requested that sexual arousal or gratification be included as an element. Lastly, he testified that trial counsel had failed to inform him that he would be sentenced as a multiple offender.

Trial counsel testified, and her testimony contradicted that of the petitioner's on multiple points. According to trial counsel, she met with the petitioner at least seven times prior to trial for at least an hour each meeting. She also stated that she and the petitioner discussed the case strategy they would pursue. Trial counsel also testified that she did not recall the petitioner's mental state being an issue, as there was no indication he was insane or incompetent. She stated that she was aware that he was depressed and that he had made a "half-hearted suicide attempt." However, she did not believe that his depression would have impacted the trial. She did not recall asking the petitioner about his medications. Additionally, she testified that she had no knowledge of the petitioner's claim that he was unable to become sexually aroused until he testified to that effect at the post-conviction hearing. She stated that, had she known this, she would have introduced evidence of such in his defense.

Trial counsel acknowledged that she did not call for "the rule" prior to voir dire. She stated that she usually followed this strategy because she liked the potential witnesses to be in the courtroom during voir dire so they could be seen when questioning the jurors if they knew the parties or witnesses. She also testified that it was not proper procedure to have prospective jurors sworn in. She recalled nothing which would have led her to the conclusion that jurors needed to be questioned at the podium, as none appeared uncomfortable answering the questions which were asked. Trial counsel stated that the petitioner did not raise any of these issues with her during the trial but only started complaining after the verdict was returned.

While trial counsel was unable to recall the specific testimony given by the witness about the petitioner's drug usage, she stated that she had addressed the testimony on cross-examination. She also contradicted the petitioner's testimony and testified that she did have a conversation with the petitioner, specifically informing him that anything he said to family or friends could be used as evidence against him at trial. She further stated that she and the petitioner discussed at length that he had the right to refuse to testify, and, in fact, she advised him not to testify. However, she testified that the petitioner was adamant about putting his side of the story before the jury. She also testified that she personally gave the petitioner a copy of the State's notice of intent to seek enhanced punishment, which clearly indicated that the petitioner would be sentenced as a multiple offender. Finally, trial counsel testified that the lesser included offenses, which the petitioner claims were omitted, were not applicable to the facts of the case and that the jury charge given was the standard charge and was appropriate.

After trial counsel testified, the petitioner was recalled to the stand and stated that trial counsel was not telling the truth. After reviewing the evidence presented, the trial court, by written

order dated August 4, 2008, denied the petition for relief. The petitioner filed notice of appeal on September 5, 2008.

**Analysis**

As an initial matter, the State contends that the petitioner's appeal should be dismissed as untimely because his notice of appeal was filed more than thirty days after the order denying post-conviction relief was entered. Tennessee Rule of Appellate Procedure 3(b) provides that a criminal defendant may appeal to this court following "a final judgment in a . . . post-conviction proceeding." Rule 4(a) of the Tennessee Rules of Appellate Procedure instructs that "the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from." However, the timely filing of a notice of appeal document in criminal matters is not jurisdictional and may be waived by this court in the interest of justice. *See* Tenn. R. App. P. 4(a).

The post-conviction court's order in this case was entered on August 4, 2008, thus, making the notice of appeal due by September 3, 2008. The notice of appeal was filed two days later, on September 5, 2008, making the notice untimely. The State contends that the "interest of justice" does not weigh in favor of waiving the timeliness requirement because the petitioner offered no explanation for the late filing. We agree that the petitioner has offered no reason for the late-filed notice and, indeed, does not even acknowledge that the notice was not timely. Nonetheless, in order to resolve the issue raised by the petitioner, we waive the requirement in the interest of justice. *Cf. Sidney Porterfield v. Rickey J. Bell*, No. M2006-02082-CCA-R3-HC (Tenn. Crim. App. at Nashville, Sept. 17, 2007) (interest of justice did not weigh in favor of untimely notice of appeal where filed more than four months late with no explanation as to why or request that it be waived).

On appeal, the petitioner asserts that the post-conviction court erred in denying his petition for post-conviction relief. Specifically, he contends that the court erred in finding that trial counsel was not ineffective based upon her failure to: investigate his mental health and his claim of impotence as possible defenses; ensure an untainted jury by requesting "the Rule" prior to voir dire; effectively preclude introduction of or properly cross-examine the witness following testimony about the petitioner's prior drug habit; and effectively advise the petitioner.

To succeed on a challenge of ineffective assistance of counsel, the petitioner bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). The petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the petitioner must establish (1) deficient performance and (2) prejudice resulting from the deficiency. The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel is dependent upon a showing that the

decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

It is unnecessary for a court to address deficiency and prejudice in any particular order or even to address both if the petitioner makes an insufficient showing on either. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *Id.* at 461. "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, *conclusions of law* are reviewed under a purely *de novo* standard with no presumption that the post-conviction court's findings are correct. *Id.*

In his appellate brief, the petitioner makes general allegations of ineffectiveness, with no analysis to support his argument. With regard to his mental health ground, he simply states that he suffered from mental abnormalities when he met trial counsel, that she failed to inquire about his condition or any medications he was prescribed, and that she did not attempt to obtain an expert to testify at trial. Likewise, he makes the blanket statement that trial counsel testified that she did not ask for "the Rule" prior to void dire. With regard to the testimony regarding his drug usage, the petitioner simply notes that trial counsel testified that she was, "quite certain" that it was addressed in cross-examination but asserts she "did not go into specifically how it was addressed." Further, the petitioner notes that, while trial counsel testified she was "quiet certain" she had informed him not to discuss the case with anyone, she did not specifically answer whether or not she informed him to remain silent. He also states that trial counsel gave no definite answer regarding whether or not the petitioner truly understood the magnitude of the proceedings, despite her testimony that she "thought" the petitioner understood the legal pitfalls such as taking the stand in his own defense or comprehending the sentencing guidelines. Finally, he stated that trial counsel "never backed up her statement" of why she believed that the jury charge was correct.

In its order denying relief, the post-conviction court made the following relevant findings:

> Petitioner complains that counsel was deficient in the following: to ask for "the rule" before voir dire; failing to request that the judge swear in prospective jurors during the jury process; failing to object to the judge not giving prospective jurors proper admonitions.

The jury was sworn to answer questions truthfully, which is included in the oath administered to the jury. The jury was give[n] the proper admonitions, which should be reflected in the trial record. The rule was enforced when requested. Counsel considers [it] proper trial strategy to allow the witnesses in the room during voire [sic] dire to allow them to be introduced during questioning. Petitioner did not express concern at the time of trial. Petitioner expressed concern after the trial only. [P]etitioner has failed to show accuracy with regard to these allegations, or that he was prejudiced.

[Trial counsel] met seven times before trial with petitioner. Other attorneys with the public defender also met with petitioner. No prejudice has been shown by petitioner by the failure to meet more times with counsel, or what would have been accomplished.

Petitioner alleges that he had mental health issues. Petitioner only mentioned to counsel that he was depressed. Counsel was aware that he made a half hearted suicide attempt, but there was no issue with regard to mental defense. Petitioner has failed to show deficient conduct by counsel or prejudice with regard to this issue.

. . . .

Counsel testified she discussed legal procedure with petitioner before trial and answered his questions. At one point petitioner wanted to represent himself and was given the opportunity to express that before trial. After a hearing in that regard, petitioner then requested counsel. Petitioner's allegations concerning counsel's failing to inform him that out of court statements could be used against him; failing to negate sexual arousal; failing to object to the court's non-inclusion of sexual arousal as an element of the crime; failing to request an instruction on the correct element for sexual contact were addressed by counsel. She answered his legal questions before and during trial. She testified she thoroughly went over these issues.

. . . .

Counsel discussed the lesser included offenses with petitioner. The court gave the proper instruction with regard to lesser included offenses, and petitioner has failed to show prejudice or ineffective assistance in regard to this issue.

. . . .

Petitioner claims he did not know he was a multiple offender. Counsel testified she discussed this with petitioner, and he knew his status, as he served time in Florida for the offenses.

. . . .

The conviction was considered on appeal, and the conviction affirmed. Petitioner has failed to show how trial counsel was deficient in investigating or representing [p]etitioner.

. . . .

The Court accredits the testimony of [trial counsel]. [P]etitioner has failed to show inadequate representation.

Review of the record reveals nothing which preponderates against the trial court's findings. The court specifically accredited the testimony of trial counsel, a decision which we will not reevaluate or disturb on appeal as issues of credibility of witnesses and the weight to be given their testimony are to be resolved by the trier of fact. *See Henley*, 960 S.W.2d at 579. Trial counsel testified that she met with the petitioner on at least seven occasions prior to trial and that she thoroughly reviewed the case with him. She testified that she informed the petitioner that statements made outside of court could be used against him and that he had the right not to testify, in fact, encouraging him not to testify. She also specifically stated that she personally delivered to the petitioner a notice of the notice of intent to seek enhanced punishment and that she explained sentencing issues to him.

With regard to the petitioner's claim that trial counsel failed to investigate his mental health or hire an expert, trial counsel stated that she was only aware that the petitioner was depressed and had made a half-hearted attempt to commit suicide. She stated that she did not think that the depression in any way supported a defense of insanity or incompetency. The petitioner acknowledged that he did not inform trial counsel of any problems from which he was suffering. Moreover, trial counsel testified that she only become aware at the post-conviction hearing of the petitioner's contention that his medication affected his ability to become sexually aroused. We agree with the post-conviction court that the petitioner failed to carry his burden of establishing deficient performance. Additionally, the petitioner has failed to establish that any prejudice resulted from these actions. He introduced no evidence at the post-conviction hearing that he was, in fact, suffering from a mental condition, or of the effects of taking Lexapro, or what an expert would have testified to. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

As found by the trial court, the decisions to have the witnesses inside the courtroom during voir dire and to not have potential jurors questioned at the podium were strategic ones made by trial counsel. It is not the province of either the post-conviction court or this court to question valid tactical decisions made after adequate preparation. *See Cooper*, 847 S.W.2d at 528. As noted by the court, the jurors in the case were sworn to tell the truth and were given the proper admonitions. With regard to the jury charge given, the petitioner does no more than contest that trial counsel did not explain why it was correct. Initially, we note that the petitioner has failed to include a copy of

the charge in the record.  As such, we are left with trial counsel's testimony that the standard charge given was appropriate.  *See Black*, 794 S.W.2d at 757.

With regard to the cross-examination of the State witness who testified about the petitioner's drug problem, his only contention is that trial counsel failed to state how it was handled on cross-examination despite the fact that she was "quite certain" it was.  This is not a valid argument.  The post-conviction court accredited trial counsel's testimony that she addressed the issue during her cross-examination of the witness, and the petitioner failed to introduce any contradictory proof other than his own unsupported testimony.  Additionally, we fail to see how testimony regarding a drug problem has a direct bearing on the charges against the petitioner.  The petitioner's only assertion is that it "would put a bad light" on him, and that assertion is not sufficient to establish prejudice.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE